**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

_____

In the Matter of                    Misc. No. 11-mc-06 (M.D. Pa.)

    DONALD A. BAILEY

                                **OPINION**

An Attorney-at-Law

                                **TO BE FILED UNDER SEAL**

_____

**Before:**    **HILLMAN, District Judge,**
          **THOMPSON and COOPER, Senior District Judges**

This matter comes before the Court by way of several motions [Doc. Nos. 35, 36] by Hubert X. Gilroy, Esquire, Investigative Counsel in this matter, requesting that this Court impose the identical discipline imposed by the Supreme Court of Pennsylvania and suspend Donald A. Bailey, Esquire from the practice of law in the United States District Court for the Middle District of Pennsylvania for a period of five (5) years. Also before the Court is a motion [Doc. No. 33] by Donald A. Bailey, Esquire requesting that this matter be unsealed and made accessible to the public, and a motion [Doc. No. 38] by Gilroy requesting a telephonic status conference with the Court to discuss the ongoing practice of law by Bailey in the Middle District of Pennsylvania.

The Court has considered the parties' motions, as well as Mr. Bailey's November 29, 2013 response [Doc. No. 34] to the Court's October 23, 2013 Order to Show Cause [Doc. No. 30].  For the reasons set forth below, the motions [Doc. Nos. 35, 36] seeking to impose reciprocal discipline and suspend Mr. Bailey from the practice of law for five years will be granted.  With regard to Mr. Bailey's motion [Doc. No. 33] to unseal these proceedings, the Court will initially issue this decision under seal but Order Mr. Gilroy to Show Cause within ten (10) days why the matter should not be unsealed.

I.    **BACKGROUND**

On approximately October 28, 2010, Devon M. Jacob, Esquire, counsel for several defendants in the matter of Gary Kovala v. William M. Steele, et al., 1:09-cv-00801, sent a letter [Doc. No. 2] to the Honorable Yvette Kane, U.S.D.J. and former Chief Judge for the United States District Court for the Middle District of Pennsylvania, who was presiding over the Kovala matter at that time.  Jacob purportedly sent the letter to Judge Kane because Jacob was "very concerned and troubled by Plaintiff's counsel's conduct during" a deposition taken in the Kovala matter and felt compelled to report that type of unprofessional conduct by an attorney.  The record reflects that

2

Donald A. Bailey, Esquire served as counsel for Plaintiff in that case, and it was his behavior which Jacob sought to bring to the attention of Judge Kane.  Jacob's letter further referenced specific examples of Bailey's conduct as set forth in the transcript of the deposition in question attached to the October 28, 2010 letter.  Jacob expressed his opinion that "no attorney should ever be permitted to act in this manner without consequence."  The specific nature of the conduct reported by Jacob to Judge Kane is largely irrelevant to the resolution of the present motions.  By way of background information only, it is sufficient to note that the conduct complained of by Jacob included the use of explicit language during the deposition and repeated interruptions by Bailey that Jacob found inconsistent with the Federal Rules of Civil Procedure.

Local Rule 83.24.1 provides in pertinent part that "[w]hen misconduct or allegations of misconduct which, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this court shall come to the attention of a judge of this court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these rules, the judge shall refer the matter to counsel for investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate."

3

Upon receipt and review of the October 28, 2010 letter from
Jacob, Judge Kane construed the letter as "a complaint
warranting reference to counsel under LR 83.24.1" and found that
it was necessary to appoint counsel to "conduct an investigation
concerning the fitness of Attorney Bailey to practice before the
Middle District of Pennsylvania and to make a recommendation for
disposition of the matter to the [C]ourt consistent with the
rules ... pertaining to disciplinary proceedings." (Order [Doc.
No. 1] 2-3, Jan. 3, 2011.)  Accordingly, Judge Kane appointed
Hubert X. Gilroy, Esquire as counsel for the Court "to
investigate the allegations of misconduct stated in the ...
letter dated October 28, 2010 from Devon M. Jacob, Esquire, and
of Attorney Bailey's fitness to practice before the [C]ourt."[1]
(Id. at 3.)  Judge Kane further ordered that at the conclusion
of the investigation, Gilroy, as investigative counsel, would be
required to file "a recommendation for a disposition of the
matter ... within thirty (30) days[.]"  (Id.)  Judge Kane's

_____

[1]     Judge Kane's January 3, 2011 Order explicitly noted that
"Attorney Don A. Bailey has been sanctioned on multiple
occasions by Judges of this [C]ourt and by the Third Circuit
Court of Appeals" and that the Court was "concerned that
Attorney Bailey may have consistently failed to meet the
Middle District Code of Professional Conduct" in a variety of
ways, including, but not limited to, failing to treat opposing
counsel and the Court with civility and respect.

order also directed the Clerk of Court to open the instant matter under the Miscellaneous Docket and to place the entire matter under seal until further Order of the Court.  (<u>Id.</u>)

Gilroy's recommendation was originally due to be filed by approximately February 2, 2011.  However, this deadline was extended on several occasions (<u>see</u> Orders [Doc. Nos. 7, 8, 14, 16]), and ultimately, Gilroy filed a timely Report and Recommendation [Doc. No. 17] on July 29, 2011.  Gilroy later supplemented [Doc. No. 18] his original Report and Recommendation on November 30, 2011.  Thereafter, on February 8, 2012, an Order issued finding that there "exist[ed] probable cause to believe that Don A. Bailey, Esquire ha[d] violated RPC 8.2(A), RPC 8.4(C), and RPC 8.4(D)" and requiring Bailey to "show cause why he should not be disciplined for the conduct set forth in the ... Reports and Recommendation" filed by Gilroy. (Order [Doc. No. 19] 1, Feb. 8, 2012.)  Bailey's subsequent motion [Doc. No. 21] seeking an extension of time to respond and show cause was granted (<u>see</u> Order [Doc. No. 22]), and Bailey ultimately filed his response [Doc. No. 23] on March 23, 2012. In his response, Bailey requested that this matter be stayed pending completion of the disciplinary proceedings instituted against him by the Disciplinary Board of the Supreme Court of Pennsylvania.  (Response [Doc. No. 23] 14.)

After Bailey's March 23, 2012 response was filed, Judge
Kane requested the "appointment of a three judge hearing panel
for this attorney discipline matter" given that there were "not
three judges of the United States District Court for the Middle
District of Pennsylvania eligible to serve on [such a] hearing
panel[.]" (Designation of Three Judge Hearing Panel [Doc. No.
24] 1, May 9, 2012.) Subsequently, the Honorable Theodore A.
McKee, Chief Judge of the United States Court of Appeals for the
Third Circuit, designated a three judge hearing panel comprised
of the undersigned, pursuant to 28 U.S.C. § 292(b) and Middle
District of Pennsylvania Local Rule 83.24.4, to "hear and
determine the cause in accordance with the statute and the Rules
of Attorney Disciplinary Enforcement in the Middle District of
Pennsylvania." (Id.)

By Order dated July 6, 2012, the undersigned panel granted
Bailey's request to stay this matter pending completion of the
disciplinary proceedings pending before the Disciplinary Board
of the Supreme Court of Pennsylvania. (Order [Doc. No. 26] 1,
July 6, 2012.) This matter remained stayed for approximately
fifteen months, and on October 4, 2013, Gilroy filed a motion
[Doc. No. 28] seeking the issuance of a Rule to Show Cause to
Bailey. Specifically, Gilroy's motion explained that by Order
of the Pennsylvania Supreme Court dated October 2, 2013, Bailey

6

had been suspended from the practice of law in the Commonwealth of Pennsylvania for a period of five years.  (Id. ¶ 9.) Therefore, Gilroy requested that this Court issue a Rule to Show Cause upon Bailey directing him to show cause why this Court should not impose the identical discipline upon him, pursuant to Local Rule 83.21, as that imposed by the Pennsylvania Supreme Court.  (Id. ¶ 10.)

On October 23, 2013, this Court granted Gilroy's motion and issued an Order to Show Cause [Doc. No. 30] requiring Bailey to show cause, by way of written submission, why the imposition of the identical discipline imposed by the Supreme Court of Pennsylvania would be unwarranted and his reasons therefor in accordance with the grounds set forth in Middle District of Pennsylvania Local Rule 83.21.4.  (Order to Show Cause [Doc. No. 30] 2, Oct. 23, 2013.)  Bailey responded to the Order to Show Cause on November 29, 2013 and simultaneously filed the pending motion [Doc. No. 33] to unseal this matter.  Several days later, Gilroy filed the pending motion [Doc. No. 36] to make Rule Absolute seeking that the identical discipline be imposed upon Mr. Bailey.  While these motions were pending, Gilroy filed a subsequent status report [Doc. No. 37] with the Court on June 19, 2014.  This status report indicated that since the time the motion [Doc. No. 36] was filed, the United States Supreme Court

had disbarred Mr. Bailey and the United States District Court
for the Eastern District of Pennsylvania had entered an Order on
May 12, 2014 suspending Mr. Bailey for a period of five years to
run concurrently with the suspension imposed by the Supreme
Court of Pennsylvania. (Pet. to Update Status [Doc. No. 37] ¶ 5;
Exs. A & B to the Petition.)

    Since that time, the Court has learned that similar
reciprocal disciplinary proceedings were also ongoing in the
United States District Court for the Western District of
Pennsylvania.  The Western District similarly issued an order to
show cause on October 16, 2013 "afford[ing] Attorney Bailey an
opportunity ... to show good cause why an identical order of
suspension [to the Supreme Court of Pennsylvania's Order] should
not be entered" in the Western District.  (Order [Doc. No. 17]
in In re Discipline of Donald A. Bailey, 2:13-mc-00433-MBC-JFC,
1.)  Bailey responded to that order to show cause and to the
Office of Disciplinary Counsel's motion to impose reciprocal
discipline against him.  (Id.)  The matter was thereafter
referred to the Western District's "Disciplinary Committee
pursuant to Local Civil Rule 83.3D(4)" and the "Committee
unanimously recommended, based on the filings in [that] case,
the face of the record, and the comprehensive March 5, 2014
Report and Recommendation prepared by a panel of the United

States District Court for the Eastern District of Pennsylvania concerning reciprocal discipline of Attorney Bailey by that court, that a further hearing on this matter was not necessary, and that this court enter an order suspending Attorney Bailey for a period of five (5) years[.]"  (Id. at 1-2.)  After the Committee made its recommendation, "a majority of the active district judges voted at the August 20, 2014 Board of Judges meeting to reciprocally suspend Attorney Bailey from the Bar of [the Western District] for a period of five (5) years[.]"  (Id. at 2.)  Accordingly on August 28, 2014, the Western District entered an Order suspending Bailey "from the practice of law in the United States District Court for the Western District of Pennsylvania for a period of five (5) years, effective retroactively to November 1, 2013, and running concurrently with the suspension imposed by the Supreme Court of Pennsylvania by order dated October 2, 2013[.]"  (Id.)

## II.  DISCUSSION

The Local Rules of this District expressly contemplate circumstances such as this where an attorney admitted to practice in this District is subjected to discipline by another court.  Local Civil Rule 83.21.1 provides in part that "[a]ny attorney admitted to practice before this court shall, upon

9

being subjected to public discipline by any other court of the United States or the District of Columbia, or by a court of any state, territory, commonwealth or possession of the United States, promptly inform the clerk of this court of such action." Where an attorney admitted to practice before this Court "has been disciplined by another court," Local Civil Rule 83.21.2 requires that "this [C]ourt shall forthwith issue a notice directed to the attorney containing: (a) A copy of the judgment or order from the other court and (b) An order to show cause directing that the attorney inform this court within thirty (30) days after service of that order upon the attorney, personally or by mail, of any claim by the attorney predicated upon the grounds set forth in Local Rule 83.21.4 that the imposition of the identical discipline by the court would be unwarranted and the reasons therefor."

After the expiration of thirty (30) days from service of the notice issued pursuant to Local Civil Rule 83.21.2, Local Civil Rule 83.21.4 requires that this Court "impose identical discipline unless the respondent attorney demonstrates, or this [C]ourt finds, that upon the face of the record upon which the discipline in another jurisdiction is predicated" at least one of the following circumstances is met.  The specific circumstances contemplated by Local Civil Rule 83.21.4 are: "(a)

10

[t]hat the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (b) [t]hat there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this court could not, consistent with its duty, accept as final the conclusion on that subject; or (c) [t]hat the imposition of the same discipline by this court would result in grave injustice; or (d) [t]hat the misconduct established is deemed by this court to warrant substantially different discipline." The Rule further provides that "[w]here this [C]ourt determines that any of said elements exist, it shall enter such other order as it deems appropriate."

The United States Court of Appeals for the Third Circuit has recognized that United States District Courts possess the inherent authority to suspend and disbar the attorneys who appear before them. In re Surrick, 338 F.3d 224, 229 (3d Cir. 2003). "[E]ven in a reciprocal disciplinary proceeding arising following imposition of discipline in another court, a federal court has the power to determine who may be admitted to its bar." In re Rodriguez, 304 F. App'x 947, 954 (3d Cir. 2008) (citing Surrick, 338 F.3d at 230-31). While this Court is not required to impose reciprocal discipline, it is certainly permitted to do so. Moreover, any order of this Court regarding

11

a decision on attorney discipline matters is reviewed only for an abuse of discretion.  Surrick, 338 F.3d at 229.

III. **ANAYLSIS**

    A.    **Imposition of Reciprocal Discipline**

    By Order dated October 2, 2013, the Supreme Court of Pennsylvania, having considered the Report and Recommendations of the Disciplinary Board dated May 1, 2013, suspended Donald A. Bailey from the "Bar of th[e] Commonwealth [of Pennsylvania] for a period of five years[.]" (Order of Supreme Court of Pennsylvania, Ex. A to Mot. for Issuance of Rule to Show Cause [Doc. No. 28-1] 1.)  Upon receipt of the October 2, 2013 Order, this Court issued the October 23, 2013 Order to Show Cause which, *inter alia*, required Bailey to show cause, by way of written submission, why the imposition of the identical discipline imposed by the Supreme Court of Pennsylvania would be unwarranted and his reasons therefor in accordance with the grounds set forth in Middle District of Pennsylvania Local Rule 83.21.4 within thirty days of service of the Order. (Order to Show Cause [Doc. No. 30] 2, Oct. 23, 2013.)  Bailey filed his response [Doc. No. 34] to the Order to Show Cause on November 29, 2013.  The Court notes that Bailey's response is approximately seventeen (17) pages in length, and includes an

additional eighty-three (83) pages of attached exhibits.

Bailey's primary contention in his response is that he "was denied due process of law during the investigative and deliberative process before" the Disciplinary Board of the Supreme Court of Pennsylvania.  (Response [Doc. No. 34] 1.) Bailey argues, therefore, that "this [C]ourt is devoid of any right to act in [a] reciprocal fashion" because there was "no lawful jurisdictional basis for the Supreme Court of Pennsylvania, nor its so-called Disciplinary Board, to act against Don Bailey because it completely and totally denied and abrogated his rights to procedural due process as is demonstrated by the plain and unequivocal facts" here.  (Id. at 4.)  According to Bailey, "[i]f the right to be heard, to cross examine, to confront one's accusers, and to call witnesses are denied, then a factual record is meaningless because it was not arrived at fairly."  (Id. at 5.)  Bailey contends that "this is what occurred here with Don Bailey in a gross and egregious manner."  (Id.)

Despite Bailey's insistence that he was denied procedural due process because he was not permitted to subpoena witnesses nor was he given an opportunity to be heard during the proceedings before the Disciplinary Board, the record before

13

this Court runs counter to that claim.[2]   Specifically, the May 1,

---

[2] The sole argument proffered by Bailey in his November 29, 2013 response is that he was denied procedural due process during the proceedings which occurred before the Disciplinary Board.  To demonstrate this denial of procedural due process, Bailey points to two separate Orders of the Supreme Court of Pennsylvania entered approximately one year apart – the first being a January 6, 2012 Order and the second being a January 17, 2013 Order – which Bailey claims admit that he was denied due process and conflict with one another.

According to Bailey "[b]oth of these orders addressed responses to petitions to review" that Bailey filed based on "due process denials founded in the Disciplinary Board's granting of motions to quash while providing Bailey no hearing, no findings of fact, nor any conclusions of law."  (Id. at 2.) Bailey explains that the January 17, 2013 Order, improperly relied upon misrepresentations made by the Office of Disciplinary Counsel that Bailey "had not opposed [several] motions to quash subpoenas" which were properly filed and served before the Disciplinary Board regarding Bailey's September 5, 2012 mitigation (sentencing) proceeding.  (Id.)  Bailey argues that the Pennsylvania Supreme Court "seized upon the opportunity to justify upholding the Disciplinary Board's improper decisions ... but in the process foolishly admitted" that the August 2011 proceedings before the Disciplinary Board "were in violation of basic procedural due process tenants."  (Id. at 2-3.)  Bailey asserts that this January 17, 2013 Order "totally countermand[s] and render[s] erroneous" the Supreme Court's January 6, 2012 Order which previously "dismissed out of hand Bailey's petitions to review/writs of prohibition filed to appeal due process errors of the Disciplinary Board's hearing panel made just prior to the August 11 & 12, 2011 hearing days[.]"  (Id. at 3.) The remainder of Bailey's response goes on at length to further explain the "conflict" between the January 6, 2012 and January 17, 2013 Orders, and how the Supreme Court has previously "foolishly admitted" that Bailey was denied procedural due process during the Disciplinary Board proceedings.

For the reasons set forth more fully above, the record clearly demonstrates that the disciplinary proceedings to which Bailey was subjected were not "so lacking in notice or [an] opportunity to be heard as to constitute a deprivation of due process" under Local Civil Rule 83.21.4.  Accordingly, the Court need not wade any further into the morass of Bailey's

14

2013 Report and Recommendation of the Disciplinary Board of the
Supreme Court of Pennsylvania (the "R&R") specifically sets
forth that Bailey "proffered twelve witnesses [at the August 11
and August 12, 2011 hearings before the Disciplinary Board],
none of whom produced credible relevant testimony to establish
[Bailey's] burden of proving that the allegations" he made
against various United States District Judges were true or that
he had an objectively reasonable belief that these allegations
were true.  (R&R ¶ 16.)  The R&R further notes that Bailey also
"proffered 70 exhibits, none of which, either individually or
collectively, provided credible relevant evidence to" meet his
burden as set forth above.  (Id. ¶ 17.)  Significantly, the R&R
makes clear that Bailey "testified on his own behalf" at the
August 2011 proceedings and "insist[ed] the allegations made by
him ... against members of the federal judiciary [were] true."
(Id. ¶ 18.)  The R&R expressly observed that Bailed "refuse[d]
to acknowledge that his allegations [were] false and that the
evidence he provided failed to establish that he had an

---

interpretation of these Orders nor address the numerous
tangential and spurious arguments he makes that fall outside of
our review under Local Civil Rule 83.21.4.  The Court notes that
Bailey was entitled under the Rules to a disciplinary procedure
that provided him with adequate notice and a sufficient
opportunity to be heard. That was the process he was due and we
are convinced after a searching examination of the record as a
whole that he received just that.

objective[ly] reasonable belief that the allegations were true, based upon a reasonably diligent inquiry." (Id.)  In general, the Disciplinary Board concluded that Bailey also "refuse[d] to accept any responsibility for any professional misconduct attributable to making or repeating the allegations" and "fail[ed] to accept adverse judicial decisions by an objective review of the facts or the law" and simply concluded "that such decisions [were] the result of a conspiracy against him or his clients." (Id. ¶¶ 19-20.)  Most significantly, the Disciplinary Board found that Bailey failed to express "regret or remorse for any statements that he made." (Id. ¶ 21.)

Not only does the record before this Court reflect that Bailey did in fact proffer a dozen witnesses during the Disciplinary Board proceedings and dozens of exhibits, Bailey's response to this Court's Order to Show Cause fails to substantively explain in any meaningful way why any additional witnesses he subpoenaed to testify, but whose subpoenas were quashed, would have otherwise changed the result reached by the Disciplinary Board.  Specifically, Bailey does not sufficiently set forth who these witnesses allegedly were, nor does he explain in adequate detail the specifics – the who, what, when, where, and how – of the testimony these witnesses would have provided and how that testimony would have resulted in a

16

different outcome before the Disciplinary Board.

Moreover, it is not lost on the Court here that nowhere in Bailey's lengthy response does he ever deny the essential claims made against him – that he made spurious, unsubstantiated allegations against sitting United States District Court Judges. Rather, Bailey continues to exhibit before this Court the type of conduct observed by other courts and by the Disciplinary Board.  That is, he continues to refuse to accept responsibility for his professional misconduct and similarly fails again to express regret or remorse for his statements.  In the Disciplinary proceedings that ultimately led to his suspension by the Supreme Court of Pennsylvania, the only defense Bailey could have proffered was that he had a good faith basis for his statements against various judges.  Bailey failed to meet his burden on that defense before the Board, and has similarly failed to demonstrate before this Court that any of the witnesses who did not testify would have offered testimony sufficient to change the outcome imposed by the Board. Accordingly, this panel finds that Bailey's due process challenge to the Disciplinary Board proceedings and his subsequent suspension by the Supreme Court of Pennsylvania fails.

17

**B.    Unsealing of this Attorney Discipline Matter**

The Court now turns to the pending motion by Bailey seeking to unseal this matter.  Generally, the public's right of access to judicial proceedings and records is integral and essential to the integrity of the judiciary, predating the Constitution itself.  <u>Mine Safety Appliances Co. v. North River Ins. Co.</u>, No. 2:09cv348, 2014 WL 1320150, at *5 (W.D. Pa. Mar. 31, 2014) (citing <u>Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Assocs.</u>, 800 F.2d 339, 343 (3d Cir. 1986)) ("The right of the public to inspect and copy judicial records antedates the Constitution.")  Moreover, the public's right of access is undisputed and pervasive, extending beyond the ability to attend open court proceedings to the right to inspect and copy judicial records and documents.  <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 780–781 (3d Cir. 1994) (recognizing that "a right of access to judicial proceedings and judicial records ... is 'beyond dispute.'"); <u>see also</u> <u>In re Cendant Corp.</u>, 260 F.3d 183, 192 (3d Cir. 2001).  This right "applies to all aspects of the judicial process where substantive determinations are made" and "attaches to documents filed with the court in conjunction with a request for adjudicatory relief."  <u>Mine Safety</u>, 2014 WL 1320150, at *5 (citations omitted).

18

As the Third Circuit has explained, "the presumption that the public has a right to inspect and copy judicial records serves numerous salutary functions" including promoting "'public confidence in the judicial system.'" Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 161 (3d Cir. 1993) (citing Republic of the Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 660 (3d Cir. 1991)). "As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." Westinghouse Elec. Corp., 949 F.2d at 660. Importantly, access to court proceedings and records "helps to assure that judges perform their duties in an honest and informed manner[.]" Id. (citation omitted). Generally, public access to civil trials also enhances the quality and safeguards the integrity of the factfinding process, fosters an appearance of fairness, heightens public respect for the judicial process, and permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government. Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1070 (citations and

19

quotations omitted).

In light of the strong presumption in favor of the public's right of access to judicial proceedings and the request by Bailey that this disciplinary proceeding be unsealed and made available to the public, the Court will order Hubert X. Gilroy, Esquire, Investigative Counsel, to show cause within ten (10) days why this matter should not be unsealed.  As a result, this Opinion and its accompanying Order will initially be issued under seal.  After receipt and consideration of Gilroy's response to the Order to Show Cause, the Court will determine whether this matter should remain under seal or should be unsealed and made available publically.


**IV.  CONCLUSION**

Given this Court's finding that Bailey has failed to establish that the procedure leading to his suspension by the Supreme Court of Pennsylvania was "so lacking in notice or opportunity to be heard as to constitute a deprivation of due process" under Local Civil Rule 83.21.4(a), the Court further finds that Bailey has failed to show cause why the reciprocal discipline should not be imposed in this Court.  Therefore, this Court will suspend Donald A. Bailey from the practice of law in the United States District Court for the Middle District of

Pennsylvania for a period of five (5) years, effective
retroactively to November 1, 2013, and running concurrently with
the suspension imposed by the Supreme Court of Pennsylvania by
Order dated October 2, 2013.  An Order consistent with this
Opinion will be entered.

                              By the Court,

                               s/ Noel L. Hillman
Dated: <u>October 15, 2014</u>        NOEL L. HILLMAN, U.S.D.J.
                              ANNE E. THOMPSON, U.S.D.J.
                              MARY L. COOPER, U.S.D.J.